*EXHIBIT "A"*

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JAE HWAN HWANG | BUTCHER BOY LIMITED |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 212 CHESWICK DRIVE<br>NORTH WALES PA 19454 | LOCHVIEW ROAD WILLOWYARD, BEITH<br>AYRSHIRE, KA15 1JB |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| YOUNG HWANG | IGB SYSTEMS LTD. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 212 CHESWICK DRIVE<br>NORTH WALES PA 19454 | LOCHVIEW ROAD WILLOWYARD BEITH<br>AYRSHIRE, KA15 1JB |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | WILLIAM LASAR III |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | LOCHVIEW ROAD WILLOWYARD BEITH<br>AYRSHIRE, KA15 1JB |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 11 | [X] Complaint ☐ Petition Action ☐ Notice of Appeal<br>☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

**AMOUNT IN CONTROVERSY** | **COURT PROGRAMS**

☐ $50,000.00 or less
[X] More than $50,000.00

☐ Arbitration      ☐ Mass Tort        ☐ Commerce          ☐ Settlement
[X] Jury           ☐ Savings Action   ☐ Minor Court Appeal ☐ Minors
☐ Non-Jury         ☐ Petition         ☐ Statutory Appeals  ☐ W/D/Survival
☐ Other:

**CASE TYPE AND CODE**

2P – PRODUCT LIABILITY

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

**FILED
PRO PROTHY**

FEB **06** 2009

**S. GARRETT**

**IS CASE SUBJECT TO
COORDINATION ORDER?**
YES          NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: JAE HWAN HWANG , YOUNG HWANG
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANTS ATTORNEY | ADDRESS |
|---|---|
| CHRISTY ADAMS | 1601 SANSOM ST<br>SUITE 2C<br>PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215) 5464208 | (215) 5461336 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 74390 | cadams@adamsrenzilaw.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| CHRISTY ADAMS | Friday, February 06, 2009, 06:08 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

ADAMS RENZI LAW
BY: CHRISTY ADAMS, ESQUIRE
ATTORNEY ID: #74390
1601 Sansom Street, Suite 2C
Philadelphia, PA 19103
Attorney for Plaintiffs

THIS IS A MAJOR CASE
JURY TRIAL DEMANDED
Filed and Attested by
PROTHONOTARY
06 FEB 2009 06:08 pm
S. GARRETT

| | | |
|---|---|---|
| JAE HWAN HWANG, and | : | COURT OF COMMON PLEAS |
| YOUNG HWANG | : | PHILADELPHIA COUNTY |
| v. | : | |
| BUTCHER BOY LIMITED d/b/a | : | , TERM |
| BUTCHER BOY, and IGB SYSTEMS | : | |
| LTD. d/b/a BUTCHER BOY , and | : | NO. |
| WILLIAM LASAR III d/b/a  BUTCHER | : | |
| BOY, and BUTCHER BOY, and | : | |
| LASAR MANUFACTURING COMPANY, | : | |
| INC. d/b/a BUTCHER BOY, and | : | |
| WESTGLEN CORPORATION d/b/a | : | |
| BUTCHER BOY, and AMERICAN | : | |
| MEAT EQUIPMENT CORP. d/b/a | : | |
| BUTCHER BOY, and AMERICAN MEAT | : | |
| EQUIPMENT LLC d/b/a BUTCHER BOY | : | |
| and, BUTCHER BOY,and | : | |
| SIEMENS-FURNAS CONTROLS, and | : | |
| FURNAS ELECTRIC CO. | : | |

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance person-ally or by attorney and filing in writing with the court your defense objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you. | Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea a visado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede pere dinero o sus propiedades u otros derechos importantes para usted. |
| You should take this paper to your lawyer at once.  If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help. | Lleva esta demanda a un abogado immediatamente.  Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal. |
| Philadelphia Bar Association<br>Lawyer Referral<br>and Information Service<br>One Reading Center<br>Philadelphia, PA  19107<br>(215) 238-1701 | Asociacion de Licenciados<br>de Filadelfia<br>Servicio de Referencia e<br>Informacion Legal<br>One Reading Center<br>Filadelfia, PA  19107<br>(215) 238-1701 |

Case ID: 090201016

## COMPLETE LIST OF DEFENDANTS:

1. BUTCHER BOY LIMITED
     LOCHVIEW ROAD WILLOWYARD, BEITH
     AYRSHIRE, KA15 1JB
10. SIEMANS-FURNAS CONTROLS
     1500 HARVESTER ROAD
     WEST CHICAGO IL 60185
11. FURNAS ELECTRIC CO.
     1000 MCKEE STREET
     BATAVIA IL 60510
2. IGB SYSTEMS LTD.
     LOCHVIEW ROAD WILLOWYARD BEITH
     AYRSHIRE, KA15 1JB
3. WILLIAM LASAR III
     LOCHVIEW ROAD WILLOWYARD BEITH
     AYRSHIRE, KA15 1JB
4. BUTCHER BOY
     LOCHVIEW ROAD WILLOWYARD BEITH
     AYRSHIRE, KA15 1JB
5. LASAR MANUFACTURING COMPANY, INC.
     2540 EAST 114TH STREET
     LOS ANGELES CA 90059
6. WESTGLEN CORPORATION
     2538 E. 115TH STREET
     LOS ANGELES CA 90059
7. AMERICAN MEAT EQUIPMENT CORP.
     640 MULBERRY AVE.
     SELMER TN 38375
8. AMERICAN MEAT EQUIPMENT LLC
     640 MULBERRY AVE.
     SELMER TN 38375
9. BUTCHER BOY
     640 MULBERRY AVE.
     SELMER TN 38375

ADAMS RENZI LAW
BY: CHRISTY ADAMS, ESQUIRE
ATTORNEY ID: #74390
1601 Sansom Street, Suite 2C
Philadelphia, PA 19103
Attorney for Plaintiffs

THIS IS A MAJOR CASE
JURY TRIAL DEMANDED

JAE HWAN HWANG      :  COURT OF COMMON PLEAS
212 Cheswick Drive      :  PHILADELPHIA COUNTY
North Wales, PA 19454     :

   and         :    , TERM
              :
YOUNG HWANG       :  NO.
212 Cheswick Drive      :
North Wales, PA 19454     :

    v.        :

BUTCHER BOY LIMITED d/b/a  :
BUTCHER BOY
Lochview Road       :
Willowyard
Beith          :
Ayrshire, KA15 1JB
Scotland        :
United Kingdom      :

   and        :

IGB SYSTEMS LTD. d/b/a   :
BUTCHER BOY
Lochview Road       :
Willowyard
Beith          :
Ayrshire, KA15 1JB
Scotland        :
United Kingdom      :

   and        :
              :

WILLIAM LASAR III d/b/a          :
BUTCHER BOY                       :
Lochview Road                     :
Willowyard                        :
Beith                             :
Ayrshire, KA15 1JB                :
Scotland                          :
United Kingdom                    :
                                  :
       and                        :
                                  :
BUTCHER BOY                       :
Lochview Road                     :
Willowyard                        :
Beith                             :
Ayrshire, KA15 1JB                :
Scotland                          :
United Kingdom                    :
                                  :
       and                        :
                                  :
LASAR MANUFACTURING COMPANY, :
INC. d/b/a BUTCHER BOY            :
2540 East 114th Street            :
Los Angeles, CA 90059            :
                                  :
       and                        :
                                  :
WESTGLEN CORPORATION d/b/a        :
BUTCHER BOY                       :
2538 E. 115th Street              :
Los Angeles, CA 90059            :
                                  :
       and                        :
                                  :
AMERICAN MEAT EQUIPMENT CORP. :
d/b/a BUTCHER BOY                 :
640 Mulberry Ave.                 :
Selmer, TN 38375                 :
                                  :
       and                        :
                                  :

AMERICAN MEAT EQUIPMENT LLC          :
d/b/a BUTCHER BOY                               :
640 Mulberry Ave.                                   :
Selmer, TN 38375                                   :
                                                            :
        and                                               :
                                                            :
BUTCHER BOY                                      :
640 Mulberry Ave.                                   :
Selmer, TN 38375                                   :
                                                            :
        and                                               :
                                                            :
SIEMENS-FURNAS CONTROLS            :
1500 Harvester Road                                 :
West Chicago, IL 60185                            :
                                                            :
        and                                               :
                                                            :
FURNAS ELECTRIC CO.                         :
1000 McKee St.                                        :
Batavia, IL 60510                                    :

## COMPLAINT IN CIVIL ACTION
## PRODUCTS LIABILITY

1.      Plaintiff, Jae Hwan Hwang, is an adult individual and citizen of the

Commonwealth of Pennsylvania, residing therein at 212 Cheswick Drive, North Wales, PA

19454.

2.      Plaintiff, Young Hwang, is an adult individual and citizen of the Commonwealth

of Pennsylvania, residing therein at 212 Cheswick Drive, North Wales, PA 19454.

3.      Defendant, Butcher Boy Limited d/b/a Butcher Boy, is alleged and therefore

averred to be a corporation and/or other business entity licensed to transact business in the

Commonwealth of Pennsylvania, with a regular place of business located therein at Lochview

Road, Willowyard, Beith, Ayrshire, KA15 1JB, Scotland, United Kingdom.

4.    Defendant, IGB Systems, LTD d/b/a Butcher Boy, is alleged and therefore averred to be a corporation and/or other business entity licensed to transact business in the Commonwealth of Pennsylvania, with a regular place of business located therein at Lochview Road, Willowyard, Beith, Ayrshire, KA15 1JB, Scotland, United Kingdom.

5.    Defendant, William Lasar III d/b/a Butcher Boy, is an adult individual and citizen of the United States, with a former address in California, and a current address at Lochview Road, Willowyard, Beith, Ayrshire, KA15 1JB, Scotland, United Kingdom.

6.    Defendant, Butcher Boy, is alleged and therefore averred to be a corporation and/or other business entity licensed to transact business in the Commonwealth of Pennsylvania, with a regular place of business located therein at Lochview Road, Willowyard, Beith, Ayrshire, KA15 1JB, Scotland, United Kingdom.

7.    Defendant, Lasar Manufacturing Corp. a/b/a Butcher Boy, is alleged and therefore averred to be a corporation and/or other business entity licensed to transact business in the Commonwealth of Pennsylvania, with a regular place of business located therein at 2540 East 114th Street, Los Angeles, CA 90059.

8.    Defendant, Westglen Corporation d/b/a Butcher Boy, is alleged and therefore averred to be a corporation and/or other business entity licensed to transact business in the Commonwealth of Pennsylvania with a regular place of business located therein at 2538 E. 115th Street, Los Angeles, CA 90059.

9.    Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, is alleged and therefore averred to be a corporation and/or other business entity licensed to transact business in

the Commonwealth of Pennsylvania, with a regular place of business located therein at 640 Mulberry Ave., Selmer, TN 38375.

10.    Defendant, American Meat Equipment LLC d/b/a Butcher Boy, is alleged and therefore averred to be a corporation and/or other business entity licensed to transact business in the Commonwealth of Pennsylvania, with a regular place of business located therein at 640 Mulberry Ave., Selmer, TN 38375.

11.    Defendant, Butcher Boy, is alleged and therefore averred to be a corporation and/or other business entity licensed to transact business in the Commonwealth of Pennsylvania, with a regular place of business located therein at 640 Mulberry Ave., Selmer, TN 38375.

12.    Defendant, Siemans-Furnas Controls, is alleged and therefore averred to be a corporation and/or other business entity licensed to transact business in the Commonwealth of Pennsylvania, with a regular place of business located therein at 1500 Harvester Road, West Chicago, IL 60185.

13.    Defendant, Furnas Electric Company, is alleged and therefore averred to be a corporation and/or other business entity licensed to transact business in the Commonwealth of Pennsylvania, with a regular place of business located therein at 1000 McKee St., Batavia, IL 60510.

14.    On or about February 9, 2007, the Plaintiff, Jae Hwan Hwang, while in the course and scope of his employment, was putting meat into a Butcher Boy meat grinder (hereinafter also called "product") when his right hand became caught, thereby amputating his right hand, wrist and part of the forearm.

15. After Plaintiff's hand became caught, he attempted to turn off the Butcher Boy meat grinder with his left hand, but was unable to reach the "off" switch due to the improper placement of the switch that was out of Plaintiff's reach.

16. As a result of the aforesaid accident, Plaintiff, Jae Hwan Hwang, has suffered injuries which are serious and permanent in nature, including, but not limited to: amputation of the right hand; amputation of the wrist; amputation of part of the forearm; amputation requiring him to wear a prosthetic device and hook; permanent scarring and disfigurement; severe nerve damage and pain; pain requiring injections; loss of use of the hand; loss of use of the forearm; mental distress and anguish; post-traumatic anxiety and depression; severe damage to his nerves and nervous system and various other ills and injuries which the Plaintiff yet suffers and may continue to suffer for an indefinite time into the future.

17. As a further result of the aforesaid accident, Plaintiff has been obliged to receive and undergo medical attention and care and to incur various and diverse expenses, all of which the Plaintiff may continue to expend and incur for an indefinite time into the future in an effort to cure him of said injuries.

18. As a further result of the aforesaid accident, Plaintiff has or may suffer a severe loss of his earnings and impairment of his earning capacity and power, all of which may continue for an indefinite into the future.

19. As a further result of the aforesaid accident, the Plaintiff has suffered severe physical pain and trauma, mental upset and anguish and humiliation and may continue to suffer the same for an indefinite time into the future.

20. As a further result of the aforesaid accident, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue for an indefinite time into the future.

21. At all times relevant, it is alleged and averred that the Butcher Boy meat grinder involved in Plaintiff's accident, including the "ON/OFF" switch, was designed, manufactured, distributed, sold, marketed and/or otherwise placed into the stream of commerce by one or more of the Defendants, Butcher Boy Limited d/b/a Butcher Boy, IGB Systems LTD. d/b/a Butcher Boy, William Lasar III d/b/a Butcher Boy, Butcher Boy, Lasar Manufacturing Company, Inc. d/b/a Butcher Boy, Westglen Corporation d/b/a Butcher Boy, American Meat Equipment Corp. d/b/a Butcher Boy, American Meat Equipment, LLC d/b/a Butcher Boy, Butcher Boy, Siemens-Furnas Controls and Furnas Electric Co.

22. It is alleged and averred that Defendant, Lasar Manufacturing Co., was founded by Defendant, William Lasar II, who died and his son, Defendant, William Lasar III took over the company.

23. It is alleged and averred that Defendant, Lasar Manufacturing Co. was placed into Chapter 11 bankruptcy and ultimately Chapter 7 bankruptcy by Defendant, William Lasar III, as a result of approximately 200 various personal injury claims asserted against it, which consisted mostly of amputations related to its meat processing equipment.

24. Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently gutted Defendant, Lasar Manufacturing Co., by transferring its assets, including goodwill, technology, patents, employees, records and functions to other wholly owned and controlled companies in the United States, Canada and Scotland,

prior to the filing of such bankruptcy, in an effort to avoid liability for personal injury claims related to its meat processing equipment.

25.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendant, Lasar Manufacturing Co., including goodwill, technology, patents, employees, records and functions to Defendant, Westglen Corporation, but this transfer was nothing more than a name change and Westglen Corporation was the alter ego of Defendant, Lasar Manufacturing Co. and was operating across the street from Defendant, Lasar Manufacturing Co.

26.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendant, Lasar Manufacturing Co. to Defendant, Westglen Corporation, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

27.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendants, Butcher Boy Limited, IGB Systems LTD, and Butcher Boy in Scotland, United Kingdom, but this transfer was nothing more than a name change and these companies are the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. *(See attachment marked as Exhibit "A")*.

28.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendants, Butcher Boy Limited, IGB Systems LTD and Butcher Boy in

Scotland, United Kingdom, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

29.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendants, American Meat Equipment Corp., American Meat Equipment LLC and Butcher Boy but this transfer was nothing more than a name change and these companies are the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

30.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendants, American Meat Equipment Corp., American Meat Equipment LLC and Butcher Boy, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

<u>COUNT I</u>
<u>JAE HWAN HWANG V. BUTCHER BOY LIMITED d/b/a BUTCHER BOY</u>
<u>STRICT LIABLITY</u>

31.     Plaintiff incorporates paragraphs 1 through 30 as though fully set forth herein at length.

32.     Defendant, Butcher Boy Limited d/b/a Butcher Boy, is strictly liable pursuant to Section 402A of the Restatement of Torts 2d as said product was defective and unreasonably dangerous at the time it was distributed and Defendant failed to warn Plaintiff and other prospective users of said defects and dangers.

33.     As a result of the defect and/or other reasonably dangerous propensities of the product, Plaintiff was caused to sustain injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against the Defendant, Butcher Boy Limited d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

### COUNT II
### JAE HWAN HWANG V. BUTCHER BOY LIMITED d/b/a BUTCHER BOY
### NEGLIGENCE

34.     Plaintiff incorporates paragraphs 1 through 33 as though fully set forth herein at length.

35.     The negligence, carelessness and recklessness of Defendant, Butcher Boy Limited d/b/a Butcher Boy, consists of, but is not limited to, the following:

a.     improperly placing the "ON/OFF" switch in a safe position so that a person, such as Plaintiff, whose hand becomes caught in the meat grinder can reach the switch to turn off the machine;

b.     failure to properly position the "ON/OFF" switch so that it would not become a hazard to persons situated such as the Plaintiff;

c.     failure to place a durable safety guard on the product to prevent persons from placing their hands in or near the grinder;

d.     failure to have a "foolproof" guard that was permanently attached to prevent a person's hand from accessing the grinder;

e.     failure to lengthen the feed throat to move the grinder farther away from the operator's fingers;

f.        failure to have an emergency stop switch;

g.        permitting a defective product to be placed into the stream of commerce being sold and eventually utilized by the foreseeable user;

h.        failure to do anything to notify owners of potential improvements made to the product, including a retrofit program;

i.        failing to notify owners of the dangers of the product;

j.        failure to adequately warn of the inherent dangers and propensities of its product;

k.        failure to adequately provide for protective measures including a "fail safe" technology;

l.        failure to employ adequate measures in the assembly, design, manufacture, recondition and production of the product to prevent the grinder from being a hazard to persons situated such as Plaintiff;

m.        failure to protect its product from seizing to function safely and properly;

n.        failure to inspect the product so as to prevent an injury from occurring;

o.        failure to properly design said product in such a manner as would afford adequate protection from injury of the lawful user thereof;

p.        failure to supply adequate warnings to the users thereof that the product would malfunction and cause injury;

q.        failure to supply any notices of warnings of the dangers of the product;

r.        failure to design, manufacture and assemble said product in such a manner that it would not become defective;

s.    failure to warn the Plaintiff, or other users of the risk of the product;

t.    failure to exercise due care in the design, assembly and manufacture of said product required under the circumstances;

u.    failure to install or place warning notices in obvious or conspicuous places on said product;

v.    failure to warn of the many limitations with respect to the capabilities and capacities of the product;

w.    failure to comply with various laws, regulations and customs of the industry with regard to safety of such products, including, but not limited to the laws of the United States of America and the Commonwealth of Pennsylvania;

x.    failure to comply with OSHA regulations with regard to the safety of such products;

y.    otherwise failing to use care and caution under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure, defect or malfunction of said product;

z.    failure to assemble the product with the appropriate devices so as to prevent an accident;

aa.    failure to properly inspect the product prior to placing it in the stream of commerce;

bb.    failure to design a product with adequate material and safety devices;

cc.    distributing a defective product to the general public and to the Plaintiff's employer;

dd.     advertising a defective product to the general public and to the Plaintiff's employer;

ee.     failure to properly train, control and supervise the intended users in the design, manufacture, reconditioning, maintenance, use and assembly of said product;

ff.     making false representations to Plaintiff that the product was safe for use, when, in fact, said product was defective and in a dangerous condition;

gg.     utilizing defective materials in the manufacture, design, installation, maintenance or use of the product;

hh.     failure to properly maintain and service the product so that it would not become a hazard to person situated such as the Plaintiff;

ii.     negligence, carelessness and recklessness at law;

jj.     such other and further acts of negligence and recklessness as will be developed by future discovery in this case.

36.     The negligence, carelessness and recklessness of the Defendant, Butcher Boy Limited d/b/a Butcher Boy, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff and expenses as set forth above.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Butcher Boy Limited d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT III
## JAE HWAN HWANG V. BUTCHER BOY LIMITED d/b/a BUTCHER BOY
## BREACH OF WARRANTY

37.     Plaintiff hereby incorporates paragraphs 1 through 37 as if the same were herein set forth at length.

38.     Defendant, Butcher Boy Limited d/b/a Butcher Boy, expressly and impliedly warranted that the product was safe and fit for the particular purpose for which it was made.

39.     The aforesaid breach of warranty was the proximate cause of the injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Butcher Boy Limited d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT IV
## JAE HWAN HWANG V. BUTCHER BOY LIMITED d/b/a BUTCHER BOY FRAUDULENT CONVEYANCE

40.     Plaintiff hereby incorporates paragraphs 1 through 39 as if the same were herein set forth at length.

41.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, Butcher Boy Limited, in Scotland, United Kingdom, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. (*See attachment marked as Exhibit "A"*).

42.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen

Corporation, to Defendant, Butcher Boy Limited, in Scotland, United Kingdom, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

43.     Due to the fraudulent conveyance, Defendant, Butcher Boy Limited d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Butcher Boy Limited d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT V
## JAE HWAN HWANG V. BUTCHER BOY LIMITED d/b/a BUTCHER BOY PIERCE CORPORATE VEIL

44.     Plaintiff hereby incorporates paragraphs 1 through 43 as if the same were herein set forth at length.

45.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, Butcher Boy Limited, in Scotland, United Kingdom, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. *(See attachment marked as Exhibit "A")*.

46.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, Butcher Boy Limited, in Scotland, United Kingdom, in an effort to

avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

47. The corporate veil of Defendant, Butcher Boy Limited d/b/a Butcher Boy, located in Scotland, United Kingdom, should be pierced because it is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

48. As a result, Defendants, William Lasar III and Butcher Boy Limited d/b/a Butcher Boy, are liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III and Butcher Boy Limited d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

### COUNT VI
### JAE HWAN HWANG V. BUTCHER BOY LIMITED d/b/a BUTCHER BOY
### SUCCESSOR LIABILITY

49. Plaintiff hereby incorporates paragraphs 1 through 48 as if the same were herein set forth at length.

50. Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, Butcher Boy Limited d/b/a Butcher Boy, in Scotland, United Kingdom, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. (*See attachment marked as Exhibit "A"*).

51.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, Butcher Boy Limited, in Scotland, United Kingdom, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

52.     Defendant, Butcher Boy Limited d/b/a Butcher Boy, located in Scotland, United Kingdom, should be liable to Plaintiff as a successor because it is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

53.     As a result, Defendant, Butcher Boy Limited d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Butcher Boy Limited d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

### COUNT VII
### JAE HWAN HWANG V. IGB SYSTEMS LTD d/b/a BUTCHER BOY
### STRICT LIABLITY

54.     Plaintiff incorporates paragraphs 1 through 53 as though fully set forth herein at length.

55.     Defendant, IGB Systems LTD d/b/a Butcher Boy, is strictly liable pursuant to Section 402A of the Restatement of Torts 2d as said product was defective and unreasonably dangerous at the time it was distributed and Defendant failed to warn Plaintiff and other prospective users of said defects and dangers.

56.     As a result of the defect and/or other reasonably dangerous propensities of the product, Plaintiff was caused to sustain injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against the Defendant, IGB Systems LTD d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT VIII
## JAE HWAN HWANG V. IGB SYSTEMS LTD d/b/a BUTCHER BOY
## NEGLIGENCE

57.     Plaintiff incorporates paragraphs 1 through 56 as though fully set forth herein at length.

58.     The negligence, carelessness and recklessness of Defendant, IGB Systems LTD d/b/a Butcher Boy, consists of, but is not limited to, the following:

a.     improperly placing the "ON/OFF" switch in a safe position so that a person, such as Plaintiff, whose hand becomes caught in the meat grinder can reach the switch to turn off the machine;

b.     failure to properly position the "ON/OFF" switch so that it would not become a hazard to persons situated such as the Plaintiff;

c.     failure to place a durable safety guard on the product to prevent persons from placing their hands in or near the grinder;

d.     failure to have a "foolproof" guard that was permanently attached to prevent a person's hand from accessing the grinder;

e.     failure to lengthen the feed throat to move the grinder farther away from the operator's fingers;

f.　failure to have an emergency stop switch;

g.　permitting a defective product to be placed into the stream of commerce being sold and eventually utilized by the foreseeable user;

h.　failure to do anything to notify owners of potential improvements made to the product, including a retrofit program;

i.　failing to notify owners of the dangers of the product;

j.　failure to adequately warn of the inherent dangers and propensities of its product;

k.　failure to adequately provide for protective measures including a "fail safe" technology;

l.　failure to employ adequate measures in the assembly, design, manufacture, recondition and production of the product to prevent the grinder from being a hazard to persons situated such as Plaintiff;

m.　failure to protect its product from seizing to function safely and properly;

n.　failure to inspect the product so as to prevent an injury from occurring;

o.　failure to properly design said product in such a manner as would afford adequate protection from injury of the lawful user thereof;

p.　failure to supply adequate warnings to the users thereof that the product would malfunction and cause injury;

q.　failure to supply any notices of warnings of the dangers of the product;

r.　failure to design, manufacture and assemble said product in such a manner that it would not become defective;

s.  failure to warn the Plaintiff, or other users of the risk of the product;

t.  failure to exercise due care in the design, assembly and manufacture of said product required under the circumstances;

u.  failure to install or place warning notices in obvious or conspicuous places on said product;

v.  failure to warn of the many limitations with respect to the capabilities and capacities of the product;

w.  failure to comply with various laws, regulations and customs of the industry with regard to safety of such products, including, but not limited to the laws of the United States of America and the Commonwealth of Pennsylvania;

x.  failure to comply with OSHA regulations with regard to the safety of such products;

y.  otherwise failing to use care and caution under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure, defect or malfunction of said product;

z.  failure to assemble the product with the appropriate devices so as to prevent an accident;

aa. failure to properly inspect the product prior to placing it in the stream of commerce;

bb. failure to design a product with adequate material and safety devices;

cc. distributing a defective product to the general public and to the Plaintiff's employer;

dd. advertising a defective product to the general public and to the Plaintiff's employer;

ee. failure to properly train, control and supervise the intended users in the design, manufacture, reconditioning, maintenance, use and assembly of said product;

ff. making false representations to Plaintiff that the product was safe for use, when, in fact, said product was defective and in a dangerous condition;

gg. utilizing defective materials in the manufacture, design, installation, maintenance or use of the product;

hh. failure to properly maintain and service the product so that it would not become a hazard to person situated such as the Plaintiff;

ii. negligence, carelessness and recklessness at law;

jj. such other and further acts of negligence and recklessness as will be developed by future discovery in this case.

59. The negligence, carelessness and recklessness of the Defendant, IGB Systems LTD d/b/a Butcher Boy, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff and expenses as set forth above.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against IGB Systems LTD d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT IX
## JAE HWAN HWANG V. IGB SYSTEMS LTD d/b/a BUTCHER BOY
## BREACH OF WARRANTY

60.     Plaintiff hereby incorporates paragraphs 1 through 59 as if the same were herein set forth at length.

61.     Defendant, IGB Systems LTD d/b/a Butcher Boy, expressly and impliedly warranted that the product was safe and fit for the particular purpose for which it was made.

62.     The aforesaid breach of warranty was the proximate cause of the injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against IGB Systems LTD d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT X
## JAE HWAN HWANG V. IGB SYSTEMS LTD d/b/a BUTCHER BOY
## FRAUDULENT CONVEYANCE

63.     Plaintiff hereby incorporates paragraphs 1 through 62 as if the same were herein set forth at length.

64.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, IGB Systems LTD d/b/a Butcher Boy, in Scotland, United Kingdom, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. *(See attachment marked as Exhibit "A").*

65.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen

Corporation, to Defendant, IGB Systems LTD d/b/a Butcher Boy, in Scotland, United Kingdom, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

66.     Due to the fraudulent conveyance, Defendant, IGB Systems LTD d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against IGB Systems LTD d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

<u>**COUNT XI**</u>
**<u>JAE HWAN HWANG V. IGB SYSTEMS LTD d/b/a BUTCHER BOY</u>**
**<u>PIERCE CORPORATE VEIL</u>**

67.     Plaintiff hereby incorporates paragraphs 1 through 66 as if the same were herein set forth at length.

68.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, IGB Systems LTD d/b/a Butcher Boy, in Scotland, United Kingdom, but this transfer was nothing more than a name change and these companies are the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. (*See attachment marked as Exhibit "A"*).

69.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, IGB Systems LTD d/b/a Butcher Boy, in Scotland, United Kingdom,

in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

70.     The corporate veil of Defendant, IGB Systems LTD d/b/a Butcher Boy, located in Scotland, United Kingdom, should be pierced because it is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

71.     As a result, Defendants, William Lasar III and IGB Systems LTD d/b/a Butcher Boy, are liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III and IGB Systems LTD d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XII
## JAE HWAN HWANG V. IGB SYSTEMS LTD d/b/a BUTCHER BOY SUCCESSOR LIABILITY

72.     Plaintiff hereby incorporates paragraphs 1 through 71 as if the same were herein set forth at length.

73.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, IGB Systems LTD d/b/a Butcher Boy, in Scotland, United Kingdom, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. (*See attachment marked as Exhibit "A"*).

74. Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, IGB Systems LTD d/b/a Butcher Boy, in Scotland, United Kingdom, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

75. Defendant, IGB Systems LTD d/b/a Butcher Boy, located in Scotland, United Kingdom, should be liable to Plaintiff as a successor because it is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

76. As a result, Defendant, IGB Systems LTD d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against IGB Systems LTD d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

**COUNT XIII**
**JAE HWAN HWANG V. WILLIAM LASAR III d/b/a BUTCHER BOY**
**STRICT LIABLITY**

77. Plaintiff incorporates paragraphs 1 through 76 as though fully set forth herein at length.

78. Defendant, William Lasar III d/b/a Butcher Boy, is strictly liable pursuant to Section 402A of the Restatement of Torts 2d as said product was defective and unreasonably dangerous at the time it was distributed and Defendant failed to warn Plaintiff and other prospective users of said defects and dangers.

79. As a result of the defect and/or other reasonably dangerous propensities of the product, Plaintiff was caused to sustain injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against the Defendant, William Lasar III d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XIV
## JAE HWAN HWANG V. WILLIAM LASAR III d/b/a BUTCHER BOY NEGLIGENCE

80. Plaintiff incorporates paragraphs 1 through 79 as though fully set forth herein at length.

81. The negligence, carelessness and recklessness of Defendant, William Lasar III d/b/a Butcher Boy, consists of, but is not limited to, the following:

a. improperly placing the "ON/OFF" switch in a safe position so that a person, such as Plaintiff, whose hand becomes caught in the meat grinder can reach the switch to turn off the machine;

b. failure to properly position the "ON/OFF" switch so that it would not become a hazard to persons situated such as the Plaintiff;

c. failure to place a durable safety guard on the product to prevent persons from placing their hands in or near the grinder;

d. failure to have a "foolproof" guard that was permanently attached to prevent a person's hand from accessing the grinder;

e. failure to lengthen the feed throat to move the grinder farther away from the operator's fingers;

f.       failure to have an emergency stop switch;

g.       permitting a defective product to be placed into the stream of commerce being sold and eventually utilized by the foreseeable user;

h.       failure to do anything to notify owners of potential improvements made to the product, including a retrofit program;

i.       failing to notify owners of the dangers of the product;

j.       failure to adequately warn of the inherent dangers and propensities of its product;

k.       failure to adequately provide for protective measures including a "fail safe" technology;

l.       failure to employ adequate measures in the assembly, design, manufacture, recondition and production of the product to prevent the grinder from being a hazard to persons situated such as Plaintiff;

m.       failure to protect its product from seizing to function safely and properly;

n.       failure to inspect the product so as to prevent an injury from occurring;

o.       failure to properly design said product in such a manner as would afford adequate protection from injury of the lawful user thereof;

p.       failure to supply adequate warnings to the users thereof that the product would malfunction and cause injury;

q.       failure to supply any notices of warnings of the dangers of the product;

r.       failure to design, manufacture and assemble said product in such a manner that it would not become defective;

s.      failure to warn the Plaintiff, or other users of the risk of the product;

t.      failure to exercise due care in the design, assembly and manufacture of said product required under the circumstances;

u.      failure to install or place warning notices in obvious or conspicuous places on said product;

v.      failure to warn of the many limitations with respect to the capabilities and capacities of the product;

w.      failure to comply with various laws, regulations and customs of the industry with regard to safety of such products, including, but not limited to the laws of the United States of America and the Commonwealth of Pennsylvania;

x.      failure to comply with OSHA regulations with regard to the safety of such products;

y.      otherwise failing to use care and caution under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure, defect or malfunction of said product;

z.      failure to assemble the product with the appropriate devices so as to prevent an accident;

aa.      failure to properly inspect the product prior to placing it in the stream of commerce;

bb.      failure to design a product with adequate material and safety devices;

cc.      distributing a defective product to the general public and to the Plaintiff's employer;

dd.     advertising a defective product to the general public and to the Plaintiff's employer;

ee.     failure to properly train, control and supervise the intended users in the design, manufacture, reconditioning, maintenance, use and assembly of said product;

ff.     making false representations to Plaintiff that the product was safe for use, when, in fact, said product was defective and in a dangerous condition;

gg.     utilizing defective materials in the manufacture, design, installation, maintenance or use of the product;

hh.     failure to properly maintain and service the product so that it would not become a hazard to person situated such as the Plaintiff;

ii.     negligence, carelessness and recklessness at law;

jj.     such other and further acts of negligence and recklessness as will be developed by future discovery in this case.

82.     The negligence, carelessness and recklessness of the Defendant, William Lasar III d/b/a Butcher Boy, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff and expenses as set forth above.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XV
## JAE HWAN HWANG V. WILLIAM LASAR III d/b/a BUTCHER BOY
## BREACH OF WARRANTY

83. Plaintiff hereby incorporates paragraphs 1 through 82 as if the same were herein set forth at length.

84. Defendant, William Lasar III d/b/a Butcher Boy, expressly and impliedly warranted that the product was safe and fit for the particular purpose for which it was made.

85. The aforesaid breach of warranty was the proximate cause of the injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XVI
## JAE HWAN HWANG V. WILLIAM LASAR III d/b/a BUTCHER BOY
## FRAUDULENT CONVEYANCE

86. Plaintiff hereby incorporates paragraphs 1 through 85 as if the same were herein set forth at length.

87. It is alleged and averred that Defendant, Lasar Manufacturing Co. was placed into Chapter 11 bankruptcy and ultimately Chapter 7 bankruptcy by Defendant, William Lasar III, as a result of approximately 200 various personal injury claims asserted against it, which consisted mostly of amputations related to its meat processing equipment.

88. Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently gutted Defendant, Lasar Manufacturing Co., by transferring its assets, including goodwill, technology, patents, employees, records and functions to other wholly owned and controlled companies in the United States, Canada and Scotland,

prior to the filing of such bankruptcy, in an effort to avoid liability for personal injury claims related to its meat processing equipment.

89.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendant, Lasar Manufacturing Co., including goodwill, technology, patents, employees, records and functions to Defendant, Westglen Corporation, but this transfer was nothing more than a name change and Westglen Corporation was the alter ego of Defendant, Lasar Manufacturing Co. and was operating across the street from Defendant, Lasar Manufacturing Co.

90.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendant, Lasar Manufacturing Co. to Defendant, Westglen Corporation, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

91.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendants, Butcher Boy Limited, IGB Systems LTD and Butcher Boy, but this transfer was nothing more than a name change and these companies are the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. (*See attachment marked as Exhibit "A"*).

92.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendants, Butcher Boy Limited, IGB Systems LTD and Butcher Boy in

Scotland, United Kingdom, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

93.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendants, American Meat Equipment Corp., American Meat Equipment LLC and Butcher Boy but this transfer was nothing more than a name change and these companies are the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

94.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendants, American Meat Equipment Corp., American Meat Equipment LLC and Butcher Boy, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

95.     Due to the fraudulent conveyances as stated above, Defendant, William Lasar III d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XVII
## JAE HWAN HWANG V. WILLIAM LASAR III d/b/a BUTCHER BOY
## PIERCE CORPORATE VEIL

96.     Plaintiff hereby incorporates paragraphs 1 through 95 as if the same were herein set forth at length.

97.     Due to the aforementioned fraudulent conveyances described in Count XVI, paragraphs 87-95, the corporate veil of Defendants, Butcher Boy Limited d/b/a Butcher Boy, IGB Systems LTD d/b/a Butcher Boy, Butcher Boy, Lasar Manufacturing Company, Inc. d/b/a Butcher Boy, Westglen Corporation d/b/a Butcher Boy, American Meat Equipment Corp. d/b/a Butcher Boy, American Meat Equipment LLC d/b/a Butcher Boy and Butcher Boy, should be pierced.

98.     As a result, Defendant, William Lasar III, is personally liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III, personally, and his agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

### COUNT XVIII
### JAE HWAN HWANG V. WILLIAM LASAR III d/b/a BUTCHER BOY
### BREACH OF FIDUCIARY DUTY OF LIQUIDATING TRUSTEE

99.     Plaintiff hereby incorporates paragraphs 1 through 98 as if the same were herein set forth at length.

100.     It is alleged and averred that Defendant, Lasar Manufacturing Co. was placed into Chapter 11 bankruptcy and ultimately Chapter 7 bankruptcy by Defendant, William Lasar III, as a result of approximately 200 various personal injury claims asserted against it, which consisted mostly of amputations related to its meat processing equipment.

101.    By making the aforementioned fraudulent conveyances of the assets of Defendant, Lasar Manufacturing Co., as described in Count XVI, paragraphs 87-95, Defendant, William Lasar III, breached his fiduciary duty as a liquidating bankruptcy trustee.

102.    As a result, Defendant, William Lasar III d/b/a Butcher Boy, is personally liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III d/b/a Butcher Boy, his agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XIX
## JAE HWAN HWANG V. BUTCHER BOY
## STRICT LIABLITY

103.    Plaintiff incorporates paragraphs 1 through 102 as though fully set forth herein at length.

104.    Defendant, Butcher Boy, is located at Lochview Road, Willowyard, Beith, Ayrshire, KA 15 1JB, Scotland, United Kingdom, and 640 Mulberry Ave., Selmer, TN 38375.

105.    Defendant, Butcher Boy, is strictly liable pursuant to Section 402A of the Restatement of Torts 2d as said product was defective and unreasonably dangerous at the time it was distributed and Defendant failed to warn Plaintiff and other prospective users of said defects and dangers.

106.    As a result of the defect and/or other reasonably dangerous propensities of the product, Plaintiff was caused to sustain injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against the Defendant, Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

### COUNT XX
### JAE HWAN HWANG V. BUTCHER BOY
### NEGLIGENCE

107.    Plaintiff incorporates paragraphs 1 through 106 as though fully set forth herein at length.

108.    The negligence, carelessness and recklessness of Defendant, Butcher Boy, consists of, but is not limited to, the following:

a.    improperly placing the "ON/OFF" switch in a safe position so that a person, such as Plaintiff, whose hand becomes caught in the meat grinder can reach the switch to turn off the machine;

b.    failure to properly position the "ON/OFF" switch so that it would not become a hazard to persons situated such as the Plaintiff;

c.    failure to place a durable safety guard on the product to prevent persons from placing their hands in or near the grinder;

d.    failure to have a "foolproof" guard that was permanently attached to prevent a person's hand from accessing the grinder;

e.    failure to lengthen the feed throat to move the grinder farther away from the operator's fingers;

f.    failure to have an emergency stop switch;

g.  permitting a defective product to be placed into the stream of commerce being sold and eventually utilized by the foreseeable user;

h.  failure to do anything to notify owners of potential improvements made to the product, including a retrofit program;

i.  failing to notify owners of the dangers of the product;

j.  failure to adequately warn of the inherent dangers and propensities of its product;

k.  failure to adequately provide for protective measures including a "fail safe" technology;

l.  failure to employ adequate measures in the assembly, design, manufacture, recondition and production of the product to prevent the grinder from being a hazard to persons situated such as Plaintiff;

m.  failure to protect its product from seizing to function safely and properly;

n.  failure to inspect the product so as to prevent an injury from occurring;

o.  failure to properly design said product in such a manner as would afford adequate protection from injury of the lawful user thereof;

p.  failure to supply adequate warnings to the users thereof that the product would malfunction and cause injury;

q.  failure to supply any notices of warnings of the dangers of the product;

r.  failure to design, manufacture and assemble said product in such a manner that it would not become defective;

s.  failure to warn the Plaintiff, or other users of the risk of the product;

t.   failure to exercise due care in the design, assembly and manufacture of said product required under the circumstances;

u.   failure to install or place warning notices in obvious or conspicuous places on said product;

v.   failure to warn of the many limitations with respect to the capabilities and capacities of the product;

w.   failure to comply with various laws, regulations and customs of the industry with regard to safety of such products, including, but not limited to the laws of the United States of America and the Commonwealth of Pennsylvania;

x.   failure to comply with OSHA regulations with regard to the safety of such products;

y.   otherwise failing to use care and caution under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure, defect or malfunction of said product;

z.   failure to assemble the product with the appropriate devices so as to prevent an accident;

aa. failure to properly inspect the product prior to placing it in the stream of commerce;

bb. failure to design a product with adequate material and safety devices;

cc. distributing a defective product to the general public and to the Plaintiff's employer;

dd. advertising a defective product to the general public and to the Plaintiff's employer;

ee. failure to properly train, control and supervise the intended users in the design, manufacture, reconditioning, maintenance, use and assembly of said product;

ff. making false representations to Plaintiff that the product was safe for use, when, in fact, said product was defective and in a dangerous condition;

gg. utilizing defective materials in the manufacture, design, installation, maintenance or use of the product;

hh. failure to properly maintain and service the product so that it would not become a hazard to person situated such as the Plaintiff;

ii. negligence, carelessness and recklessness at law;

jj. such other and further acts of negligence and recklessness as will be developed by future discovery in this case.

109. The negligence, carelessness and recklessness of the Defendant, Butcher Boy, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff and expenses as set forth above.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

### COUNT XXI
### JAE HWAN HWANG V. BUTCHER BOY
### BREACH OF WARRANTY

110. Plaintiff hereby incorporates paragraphs 1 through 109 as if the same were herein set forth at length.

111. Defendant, Butcher Boy, expressly and impliedly warranted that the product was safe and fit for the particular purpose for which it was made.

112. The aforesaid breach of warranty was the proximate cause of the injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

**COUNT XXII**
**JAE HWAN HWANG V. BUTCHER BOY**
**FRAUDULENT CONVEYANCE**

113. Plaintiff hereby incorporates paragraphs 1 through 112 as if the same were herein set forth at length.

114. Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, Butcher Boy, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. (*See attachment marked as Exhibit "A"*).

115. Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen

Corporation, to Defendant, Butcher Boy, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

116. Due to the fraudulent conveyance, Defendant, Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

**COUNT XXIII**
**JAE HWAN HWANG V. BUTCHER BOY**
**PIERCE CORPORATE VEIL**

117. Plaintiff hereby incorporates paragraphs 1 through 116 as if the same were herein set forth at length.

118. Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, Butcher Boy, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. (*See attachment marked as Exhibit "A"*).

119. Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, Butcher Boy, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

120.     The corporate veil of Defendant, Butcher Boy, should be pierced because it is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

121.     As a result, Defendant, William Lasar III and Butcher Boy, are liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III and Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

### COUNT XXIV
### JAE HWAN HWANG V. BUTCHER BOY
### SUCCESSOR LIABILITY

122.     Plaintiff hereby incorporates paragraphs 1 through 121 as if the same were herein set forth at length.

123.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, Butcher Boy, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation. (*See attachment marked as Exhibit "A"*).

124.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, Butcher Boy, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

125. Defendant, Butcher Boy, should be liable to Plaintiff as a successor because it is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

126. As a result, Defendant, Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

**COUNT XXV**
**JAE HWAN HWANG V. LASAR MANUFACTURING COMPANY, INC.**
**d/b/a BUTCHER BOY**
**STRICT LIABLITY**

127. Plaintiff incorporates paragraphs 1 through 126 as though fully set forth herein at length.

128. Defendant, Lasar Manufacturing Company, Inc. d/b/a Butcher Boy, is strictly liable pursuant to Section 402A of the Restatement of Torts 2d as said product was defective and unreasonably dangerous at the time it was distributed and Defendant failed to warn Plaintiff and other prospective users of said defects and dangers.

129. As a result of the defect and/or other reasonably dangerous propensities of the product, Plaintiff was caused to sustain injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against the Defendant, Lasar Manufacturing Company, Inc. d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XXVI
## JAE HWAN HWANG V. LASAR MANUFACTURING COMPANY, INC.
## d/b/a BUTCHER BOY
## NEGLIGENCE

130.    Plaintiff incorporates paragraphs 1 through 129 as though fully set forth herein at length.

131.    The negligence, carelessness and recklessness of Defendant, Lasar Manufacturing Company, Inc. d/b/a Butcher Boy, consists of, but is not limited to, the following:

a.    improperly placing the "ON/OFF" switch in a safe position so that a person, such as Plaintiff, whose hand becomes caught in the meat grinder can reach the switch to turn off the machine;

b.    failure to properly position the "ON/OFF" switch so that it would not become a hazard to persons situated such as the Plaintiff;

c.    failure to place a durable safety guard on the product to prevent persons from placing their hands in or near the grinder;

d.    failure to have a "foolproof" guard that was permanently attached to prevent a person's hand from accessing the grinder;

e.    failure to lengthen the feed throat to move the grinder farther away from the operator's fingers;

f.    failure to have an emergency stop switch;

g.    permitting a defective product to be placed into the stream of commerce being sold and eventually utilized by the foreseeable user;

h.    failure to do anything to notify owners of potential improvements made to the product, including a retrofit program;

i.　　failing to notify owners of the dangers of the product;

j.　　failure to adequately warn of the inherent dangers and propensities of its product;

k.　　failure to adequately provide for protective measures including a "fail safe" technology;

l.　　failure to employ adequate measures in the assembly, design, manufacture, recondition and production of the product to prevent the grinder from being a hazard to persons situated such as Plaintiff;

m.　　failure to protect its product from seizing to function safely and properly;

n.　　failure to inspect the product so as to prevent an injury from occurring;

o.　　failure to properly design said product in such a manner as would afford adequate protection from injury of the lawful user thereof;

p.　　failure to supply adequate warnings to the users thereof that the product would malfunction and cause injury;

q.　　failure to supply any notices of warnings of the dangers of the product;

r.　　failure to design, manufacture and assemble said product in such a manner that it would not become defective;

s.　　failure to warn the Plaintiff, or other users of the risk of the product;

t.　　failure to exercise due care in the design, assembly and manufacture of said product required under the circumstances;

u.　　failure to install or place warning notices in obvious or conspicuous places on said product;

v.      failure to warn of the many limitations with respect to the capabilities and capacities of the product;

w.      failure to comply with various laws, regulations and customs of the industry with regard to safety of such products, including, but not limited to the laws of the United States of America and the Commonwealth of Pennsylvania;

x.      failure to comply with OSHA regulations with regard to the safety of such products;

y.      otherwise failing to use care and caution under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure, defect or malfunction of said product;

z.      failure to assemble the product with the appropriate devices so as to prevent an accident;

aa.     failure to properly inspect the product prior to placing it in the stream of commerce;

bb.     failure to design a product with adequate material and safety devices;

cc.     distributing a defective product to the general public and to the Plaintiff's employer;

dd.     advertising a defective product to the general public and to the Plaintiff's employer;

ee.     failure to properly train, control and supervise the intended users in the design, manufacture, reconditioning, maintenance, use and assembly of said product;

ff.     making false representations to Plaintiff that the product was safe for use, when, in fact, said product was defective and in a dangerous condition;

gg.     utilizing defective materials in the manufacture, design, installation, maintenance or use of the product;

hh.     failure to properly maintain and service the product so that it would not become a hazard to person situated such as the Plaintiff;

ii.     negligence, carelessness and recklessness at law;

jj.     such other and further acts of negligence and recklessness as will be developed by future discovery in this case.

132.     The negligence, carelessness and recklessness of the Defendant, Butcher Boy Limited d/b/a Butcher Boy, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff and expenses as set forth above.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Butcher Boy Limited d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XXVII
## JAE HWAN HWANG V. LASAR MANUFACTURING COMPANY, INC. d/b/a BUTCHER BOY
## BREACH OF WARRANTY

133.     Plaintiff hereby incorporates paragraphs 1 through 132 as if the same were herein set forth at length.

134.     Defendant, Lasar Manufacturing Company, Inc. d/b/a Butcher Boy, expressly and impliedly warranted that the product was safe and fit for the particular purpose for which it was made.

135. The aforesaid breach of warranty was the proximate cause of the injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Lasar Manufacturing Company, Inc. d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XXVIII
## JAE HWAN HWANG V. WESTGLEN CORPORATION d/b/a BUTCHER BOY
## STRICT LIABLITY

136. Plaintiff incorporates paragraphs 1 through 135 as though fully set forth herein at length.

137. Defendant, Westglen Corporation d/b/a Butcher Boy, is strictly liable pursuant to Section 402A of the Restatement of Torts 2d as said product was defective and unreasonably dangerous at the time it was distributed and Defendant failed to warn Plaintiff and other prospective users of said defects and dangers.

138. As a result of the defect and/or other reasonably dangerous propensities of the product, Plaintiff was caused to sustain injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against the Defendant, Westglen Corporation d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XXIX
## JAE HWAN HWANG V. WESTGLEN CORPORATION d/b/a BUTCHER BOY
## NEGLIGENCE

139.    Plaintiff incorporates paragraphs 1 through 138 as though fully set forth herein at length.

140.    The negligence, carelessness and recklessness of Defendant, Westglen Corporation d/b/a Butcher Boy, consists of, but is not limited to, the following:

a.    improperly placing the "ON/OFF" switch in a safe position so that a person, such as Plaintiff, whose hand becomes caught in the meat grinder can reach the switch to turn off the machine;

b.    failure to properly position the "ON/OFF" switch so that it would not become a hazard to persons situated such as the Plaintiff;

c.    failure to place a durable safety guard on the product to prevent persons from placing their hands in or near the grinder;

d.    failure to have a "foolproof" guard that was permanently attached to prevent a person's hand from accessing the grinder;

e.    failure to lengthen the feed throat to move the grinder farther away from the operator's fingers;

f.    failure to have an emergency stop switch;

g.    permitting a defective product to be placed into the stream of commerce being sold and eventually utilized by the foreseeable user;

h.    failure  to do anything to notify owners of potential improvements made to the product, including a retrofit program;

i.    failing to notify owners of the dangers of the product;

j.       failure to adequately warn of the inherent dangers and propensities of its product;

k.       failure to adequately provide for protective measures including a "fail safe" technology;

l.       failure to employ adequate measures in the assembly, design, manufacture, recondition and production of the product to prevent the grinder from being a hazard to persons situated such as Plaintiff;

m.       failure to protect its product from seizing to function safely and properly;

n.       failure to inspect the product so as to prevent an injury from occurring;

o.       failure to properly design said product in such a manner as would afford adequate protection from injury of the lawful user thereof;

p.       failure to supply adequate warnings to the users thereof that the product would malfunction and cause injury;

q.       failure to supply any notices of warnings of the dangers of the product;

r.       failure to design, manufacture and assemble said product in such a manner that it would not become defective;

s.       failure to warn the Plaintiff, or other users of the risk of the product;

t.       failure to exercise due care in the design, assembly and manufacture of said product required under the circumstances;

u.       failure to install or place warning notices in obvious or conspicuous places on said product;

v.      failure to warn of the many limitations with respect to the capabilities and capacities of the product;

w.      failure to comply with various laws, regulations and customs of the industry with regard to safety of such products, including, but not limited to the laws of the United States of America and the Commonwealth of Pennsylvania;

x.      failure to comply with OSHA regulations with regard to the safety of such products;

y.      otherwise failing to use care and caution under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure, defect or malfunction of said product;

z.      failure to assemble the product with the appropriate devices so as to prevent an accident;

aa.      failure to properly inspect the product prior to placing it in the stream of commerce;

bb.      failure to design a product with adequate material and safety devices;

cc.      distributing a defective product to the general public and to the Plaintiff's employer;

dd.      advertising a defective product to the general public and to the Plaintiff's employer;

ee.      failure to properly train, control and supervise the intended users in the design, manufacture, reconditioning, maintenance, use and assembly of said product;

ff.     making false representations to Plaintiff that the product was safe for use, when, in fact, said product was defective and in a dangerous condition;

gg.     utilizing defective materials in the manufacture, design, installation, maintenance or use of the product;

hh.     failure to properly maintain and service the product so that it would not become a hazard to person situated such as the Plaintiff;

ii.     negligence, carelessness and recklessness at law;

jj.     such other and further acts of negligence and recklessness as will be developed by future discovery in this case.

141.    The negligence, carelessness and recklessness of the Defendant, Westglen Corporation d/b/a Butcher Boy, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff and expenses as set forth above.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Westglen Corporation d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XXX
## JAE HWAN HWANG V. WESTGLEN CORPORATION d/b/a BUTCHER BOY
## BREACH OF WARRANTY

142.    Plaintiff hereby incorporates paragraphs 1 through 141 as if the same were herein set forth at length.

143.    Defendant, Westglen Corporation d/b/a Butcher Boy, expressly and impliedly warranted that the product was safe and fit for the particular purpose for which it was made.

144. The aforesaid breach of warranty was the proximate cause of the injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Westglen Corporation d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XXXI
## JAE HWAN HWANG V. WESTGLEN CORPORATION d/b/a BUTCHER BOY
## FRAUDULENT CONVEYANCE

145. Plaintiff hereby incorporates paragraphs 1 through 144 as if the same were herein set forth at length.

146. It is alleged and averred that Defendant, Lasar Manufacturing Co. was placed into Chapter 11 bankruptcy and ultimately Chapter 7 bankruptcy by Defendant, William Lasar III, as a result of approximately 200 various personal injury claims asserted against it, which consisted mostly of amputations related to its meat processing equipment.

147. Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently gutted Defendant, Lasar Manufacturing Co., by transferring its assets, including goodwill, technology, patents, employees, records and functions to other wholly owned and controlled companies in the United States, Canada and Scotland, prior to the filing of such bankruptcy, in an effort to avoid liability for personal injury claims related to its meat processing equipment.

148. Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendant, Lasar Manufacturing Co., including goodwill, technology, patents, employees, records and functions to Defendant,

Westglen Corporation, but this transfer was nothing more than a name change and Westglen Corporation was the alter ego of Defendant, Lasar Manufacturing Co. and was operating across the street from Defendant, Lasar Manufacturing Co.

149.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendant, Lasar Manufacturing Co. to Defendant, Westglen Corporation, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

150.    Due to the fraudulent conveyance, Defendant, Westglen Corporation d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Westglen Corporation d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XXXII
## JAE HWAN HWANG V. WESTGLEN CORPORATION d/b/a BUTCHER BOY PIERCE CORPORATE VEIL

151.    Plaintiff hereby incorporates paragraphs 1 through 150 as if the same were herein set forth at length.

152.    Due to the aforementioned fraudulent transfers as described above, the corporate veil of Defendant, Westglen Corporation d/b/a Butcher Boy, should be pierced because it is the alter ego of Defendant, Lasar Manufacturing Co.

153.    As a result, Defendant, William Lasar III and Westglen Corporation d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III and Westglen Corporation d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XXXIII
## JAE HWAN HWANG V. WESTGLEN CORPORATION d/b/a BUTCHER BOY
## SUCCESSOR LIABILITY

154.    Plaintiff hereby incorporates paragraphs 1 through 153 as if the same were herein set forth at length.

155.    Due to the aforementioned fraudulent transfers as described above, Defendant, Westglen Corporation is a successor of Defendant, Lasar Manufacturing, Company, Inc.

156.    Defendant, Westglen Corporation d/b/a Butcher Boy, is liable to Plaintiff as a successor because it is the alter ego of Defendant, Lasar Manufacturing Co.

157.    As a result, Defendant, Westglen Corporation d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Westglen Corporation d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XXXIV
## JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT CORP.
## d/b/a BUTCHER BOY
## STRICT LIABLITY

158.    Plaintiff incorporates paragraphs 1 through 157 as though fully set forth herein at length.

159.     Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, is strictly liable pursuant to Section 402A of the Restatement of Torts 2d as said product was defective and unreasonably dangerous at the time it was distributed and Defendant failed to warn Plaintiff and other prospective users of said defects and dangers.

160.     As a result of the defect and/or other reasonably dangerous propensities of the product, Plaintiff was caused to sustain injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against the Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

**COUNT XXXV**
**JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT CORP.**
**d/b/a BUTCHER BOY**
**NEGLIGENCE**

161.     Plaintiff incorporates paragraphs 1 through 160 as though fully set forth herein at length.

162.     The negligence, carelessness and recklessness of Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, consists of, but is not limited to, the following:

a.     improperly placing the "ON/OFF" switch in a safe position so that a person, such as Plaintiff, whose hand becomes caught in the meat grinder can reach the switch to turn off the machine;

b.     failure to properly position the "ON/OFF" switch so that it would not become a hazard to persons situated such as the Plaintiff;

c.     failure to place a durable safety guard on the product to prevent persons from placing their hands in or near the grinder;

d.     failure to have a "foolproof" guard that was permanently attached to prevent a person's hand from accessing the grinder;

e.     failure to lengthen the feed throat to move the grinder farther away from the operator's fingers;

f.     failure to have an emergency stop switch;

g.     permitting a defective product to be placed into the stream of commerce being sold and eventually utilized by the foreseeable user;

h.     failure to do anything to notify owners of potential improvements made to the product, including a retrofit program;

i.     failing to notify owners of the dangers of the product;

j.     failure to adequately warn of the inherent dangers and propensities of its product;

k.     failure to adequately provide for protective measures including a "fail safe" technology;

l.     failure to employ adequate measures in the assembly, design, manufacture, recondition and production of the product to prevent the grinder from being a hazard to persons situated such as Plaintiff;

m.     failure to protect its product from seizing to function safely and properly;

n.     failure to inspect the product so as to prevent an injury from occurring;

o.      failure to properly design said product in such a manner as would afford adequate protection from injury of the lawful user thereof;

p.      failure to supply adequate warnings to the users thereof that the product would malfunction and cause injury;

q.      failure to supply any notices of warnings of the dangers of the product;

r.      failure to design, manufacture and assemble said product in such a manner that it would not become defective;

s.      failure to warn the Plaintiff, or other users of the risk of the product;

t.      failure to exercise due care in the design, assembly and manufacture of said product required under the circumstances;

u.      failure to install or place warning notices in obvious or conspicuous places on said product;

v.      failure to warn of the many limitations with respect to the capabilities and capacities of the product;

w.      failure to comply with various laws, regulations and customs of the industry with regard to safety of such products, including, but not limited to the laws of the United States of America and the Commonwealth of Pennsylvania;

x.      failure to comply with OSHA regulations with regard to the safety of such products;

y.      otherwise failing to use care and caution under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure, defect or malfunction of said product;

z.  failure to assemble the product with the appropriate devices so as to prevent an accident;

aa.  failure to properly inspect the product prior to placing it in the stream of commerce;

bb.  failure to design a product with adequate material and safety devices;

cc.  distributing a defective product to the general public and to the Plaintiff's employer;

dd.  advertising a defective product to the general public and to the Plaintiff's employer;

ee.  failure to properly train, control and supervise the intended users in the design, manufacture, reconditioning, maintenance, use and assembly of said product;

ff.  making false representations to Plaintiff that the product was safe for use, when, in fact, said product was defective and in a dangerous condition;

gg.  utilizing defective materials in the manufacture, design, installation, maintenance or use of the product;

hh.  failure to properly maintain and service the product so that it would not become a hazard to person situated such as the Plaintiff;

ii.  negligence, carelessness and recklessness at law;

jj.  such other and further acts of negligence and recklessness as will be developed by future discovery in this case.

163. The negligence, carelessness and recklessness of the Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff and expenses as set forth above.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against American Meat Equipment Corp. d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

### COUNT XXXVI
### JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT CORP.
### d/b/a BUTCHER BOY
### BREACH OF WARRANTY

164. Plaintiff hereby incorporates paragraphs 1 through 163 as if the same were herein set forth at length.

165. Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, expressly and impliedly warranted that the product was safe and fit for the particular purpose for which it was made.

166. The aforesaid breach of warranty was the proximate cause of the injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against American Meat Equipment Corp. d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

### COUNT XXXVII
### JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT CORP.
### d/b/a BUTCHER BOY
### FRAUDULENT CONVEYANCE

167. Plaintiff hereby incorporates paragraphs 1 through 166 as if the same were herein set forth at length.

168. Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

169. Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

170. Due to the fraudulent conveyance, Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against American Meat Equipment Corp. d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XXXVIII
## JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT CORP.
### d/b/a BUTCHER BOY
### PIERCE CORPORATE VEIL

171. Plaintiff hereby incorporates paragraphs 1 through 170 as if the same were herein set forth at length.

172. Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

173. Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

174. The corporate veil of Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, should be pierced because it is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

175. As a result, Defendants, William Lasar III and American Meat Equipment Corp. d/b/a Butcher Boy, are liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III and American Meat Equipment Corp. d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

176.    Plaintiff hereby incorporates paragraphs 1 through 175 as if the same were herein set forth at length.

177.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

178.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, American Meat Equipment Corp., in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

179.    Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, should be liable to Plaintiff as a successor because it is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

180.    As a result, Defendant, American Meat Equipment Corp. d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against American Meat Equipment Corp. d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XL
## JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT LLC
### d/b/a BUTCHER BOY
### STRICT LIABLITY

181.   Plaintiff incorporates paragraphs 1 through 180 as though fully set forth herein at length.

182.   Defendant, American Meat Equipment LLC d/b/a Butcher Boy, is strictly liable pursuant to Section 402A of the Restatement of Torts 2d as said product was defective and unreasonably dangerous at the time it was distributed and Defendant failed to warn Plaintiff and other prospective users of said defects and dangers.

183.   As a result of the defect and/or other reasonably dangerous propensities of the product, Plaintiff was caused to sustain injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against the Defendant, American Meat Equipment LLC d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XLI
## JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT LLC
### d/b/a BUTCHER BOY
### NEGLIGENCE

184.   Plaintiff incorporates paragraphs 1 through 183 as though fully set forth herein at length.

185.   The negligence, carelessness and recklessness of Defendant, American Meat Equipment LLC d/b/a Butcher Boy, consists of, but is not limited to, the following:

a.      improperly placing the "ON/OFF" switch in a safe position so that a person, such as Plaintiff, whose hand becomes caught in the meat grinder can reach the switch to turn off the machine;

b.      failure to properly position the "ON/OFF" switch so that it would not become a hazard to persons situated such as the Plaintiff;

c.      failure to place a durable safety guard on the product to prevent persons from placing their hands in or near the grinder;

d.      failure to have a "foolproof" guard that was permanently attached to prevent a person's hand from accessing the grinder;

e.      failure to lengthen the feed throat to move the grinder farther away from the operator's fingers;

f.      failure to have an emergency stop switch;

g.      permitting a defective product to be placed into the stream of commerce being sold and eventually utilized by the foreseeable user;

h.      failure to do anything to notify owners of potential improvements made to the product, including a retrofit program;

i.      failing to notify owners of the dangers of the product;

j.      failure to adequately warn of the inherent dangers and propensities of its product;

k.      failure to adequately provide for protective measures including a "fail safe" technology;

l.          failure to employ adequate measures in the assembly, design, manufacture, recondition and production of the product to prevent the grinder from being a hazard to persons situated such as Plaintiff;

m.          failure to protect its product from seizing to function safely and properly;

n.          failure to inspect the product so as to prevent an injury from occurring;

o.          failure to properly design said product in such a manner as would afford adequate protection from injury of the lawful user thereof;

p.          failure to supply adequate warnings to the users thereof that the product would malfunction and cause injury;

q.          failure to supply any notices of warnings of the dangers of the product;

r.          failure to design, manufacture and assemble said product in such a manner that it would not become defective;

s.          failure to warn the Plaintiff, or other users of the risk of the product;

t.          failure to exercise due care in the design, assembly and manufacture of said product required under the circumstances;

u.          failure to install or place warning notices in obvious or conspicuous places on said product;

v.          failure to warn of the many limitations with respect to the capabilities and capacities of the product;

w.          failure to comply with various laws, regulations and customs of the industry with regard to safety of such products, including, but not limited to the laws of the United States of America and the Commonwealth of Pennsylvania;

x.      failure to comply with OSHA regulations with regard to the safety of such products;

y.      otherwise failing to use care and caution under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure, defect or malfunction of said product;

z.      failure to assemble the product with the appropriate devices so as to prevent an accident;

aa.      failure to properly inspect the product prior to placing it in the stream of commerce;

bb.      failure to design a product with adequate material and safety devices;

cc.      distributing a defective product to the general public and to the Plaintiff's employer;

dd.      advertising a defective product to the general public and to the Plaintiff's employer;

ee.      failure to properly train, control and supervise the intended users in the design, manufacture, reconditioning, maintenance, use and assembly of said product;

ff.      making false representations to Plaintiff that the product was safe for use, when, in fact, said product was defective and in a dangerous condition;

gg.      utilizing defective materials in the manufacture, design, installation, maintenance or use of the product;

hh.      failure to properly maintain and service the product so that it would not become a hazard to person situated such as the Plaintiff;

ii.     negligence, carelessness and recklessness at law;

jj.     such other and further acts of negligence and recklessness as will be developed by future discovery in this case.

186.    The negligence, carelessness and recklessness of the Defendant, American Meat Equipment LLC d/b/a Butcher Boy, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff and expenses as set forth above.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against American Meat Equipment LLC d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

**COUNT XLII**
**JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT LLC**
**d/b/a BUTCHER BOY**
**BREACH OF WARRANTY**

187.    Plaintiff hereby incorporates paragraphs 1 through 186 as if the same were herein set forth at length.

188.    Defendant, American Meat Equipment LLC d/b/a Butcher Boy, expressly and impliedly warranted that the product was safe and fit for the particular purpose for which it was made.

189.    The aforesaid breach of warranty was the proximate cause of the injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against American Meat Equipment LLC d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XLIII
## JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT LLC
### d/b/a BUTCHER BOY
## FRAUDULENT CONVEYANCE

190.    Plaintiff hereby incorporates paragraphs 1 through 189 as if the same were herein set forth at length.

191.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, American Meat Equipment LLC d/b/a Butcher Boy, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

192.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, American Meat Equipment LLC d/b/a Butcher Boy, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

193.    Due to the fraudulent conveyance, Defendant, American Meat Equipment LLC d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against American Meat Equipment LLC d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XLIV
## JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT LLC
## d/b/a BUTCHER BOY
## PIERCE CORPORATE VEIL

194.     Plaintiff hereby incorporates paragraphs 1 through 193 as if the same were herein set forth at length.

195.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, American Meat Equipment LLC d/b/a Butcher Boy, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

196.     Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, American Meat Equipment LLC d/b/a Butcher Boy, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

197.     The corporate veil of Defendant, American Meat Equipment LLC d/b/a Butcher Boy, should be pierced because it is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

198.     As a result, Defendants, William Lasar III and American Meat Equipment LLC d/b/a Butcher Boy, are liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against William Lasar III and American Meat Equipment LLC d/b/a Butcher Boy, its agents, servants, workmen and/or

employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

**COUNT XLV**
**JAE HWAN HWANG V. AMERICAN MEAT EQUIPMENT LLC**
**d/b/a BUTCHER BOY**
**SUCCESSOR LIABILITY**

199.    Plaintiff hereby incorporates paragraphs 1 through 198 as if the same were herein set forth at length.

200.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III intentionally and fraudulently transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, including goodwill, technology, patents, employees, records and functions to Defendant, American Meat Equipment LLC d/b/a Butcher Boy, but this transfer was nothing more than a name change and the company is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

201.    Upon information and belief, it is alleged and averred that Defendant, William Lasar III transferred the assets of Defendants, Lasar Manufacturing Co. and Westglen Corporation, to Defendant, American Meat Equipment LLC, in an effort to avoid liability for personal injuries caused by machines manufactured by Lasar Manufacturing Co.

202.    Defendant, American Meat Equipment LLC d/b/a Butcher Boy, should be liable to Plaintiff as a successor because it is the alter ego of Defendants, Lasar Manufacturing Co. and Westglen Corporation.

203.    As a result, Defendant, American Meat Equipment LLC d/b/a Butcher Boy, is liable for the injuries and damages to Plaintiff, Jae Hwan Hwang.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against American Meat Equipment LLC d/b/a Butcher Boy, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XLVI
## JAE HWAN HWANG V. SIEMENS-FURNAS CONTROLS
## STRICT LIABLITY

204.    Plaintiff incorporates paragraphs 1 through 203 as though fully set forth herein at length.

205.    Defendant, Siemens-Furnas Controls, is strictly liable pursuant to Section 402A of the Restatement of Torts 2d as said product was defective and unreasonably dangerous at the time it was distributed and Defendant failed to warn Plaintiff and other prospective users of said defects and dangers.

206.    As a result of the defect and/or other reasonably dangerous propensities of the product, Plaintiff was caused to sustain injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against the Defendant, Siemens-Furnas Controls, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XLVII
## JAE HWAN HWANG V. SIEMENS-FURNAS CONTROLS
## NEGLIGENCE

207.    Plaintiff incorporates paragraphs 1 through 206 as though fully set forth herein at length.

208.    The negligence, carelessness and recklessness of Defendant, Siemens-Furnas Controls, consists of, but is not limited to, the following:

a. improperly placing the "ON/OFF" switch in a safe position so that a person, such as Plaintiff, whose hand becomes caught in the meat grinder can reach the switch to turn off the machine;

b. failure to properly position the "ON/OFF" switch so that it would not become a hazard to persons situated such as the Plaintiff;

c. failure to place a durable safety guard on the product to prevent persons from placing their hands in or near the grinder;

d. failure to have a "foolproof" guard that was permanently attached to prevent a person's hand from accessing the grinder;

e. failure to lengthen the feed throat to move the grinder farther away from the operator's fingers;

f. failure to have an emergency stop switch;

g. permitting a defective product to be placed into the stream of commerce being sold and eventually utilized by the foreseeable user;

h. failure to do anything to notify owners of potential improvements made to the product, including a retrofit program;

i. failing to notify owners of the dangers of the product;

j. failure to adequately warn of the inherent dangers and propensities of its product;

k. failure to adequately provide for protective measures including a "fail safe" technology;

l.	failure to employ adequate measures in the assembly, design, manufacture, recondition and production of the product to prevent the grinder from being a hazard to persons situated such as Plaintiff;

m.	failure to protect its product from seizing to function safely and properly;

n.	failure to inspect the product so as to prevent an injury from occurring;

o.	failure to properly design said product in such a manner as would afford adequate protection from injury of the lawful user thereof;

p.	failure to supply adequate warnings to the users thereof that the product would malfunction and cause injury;

q.	failure to supply any notices of warnings of the dangers of the product;

r.	failure to design, manufacture and assemble said product in such a manner that it would not become defective;

s.	failure to warn the Plaintiff, or other users of the risk of the product;

t.	failure to exercise due care in the design, assembly and manufacture of said product required under the circumstances;

u.	failure to install or place warning notices in obvious or conspicuous places on said product;

v.	failure to warn of the many limitations with respect to the capabilities and capacities of the product;

w.	failure to comply with various laws, regulations and customs of the industry with regard to safety of such products, including, but not limited to the laws of the United States of America and the Commonwealth of Pennsylvania;

x.     failure to comply with OSHA regulations with regard to the safety of such products;

y.     otherwise failing to use care and caution under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure, defect or malfunction of said product;

z.     failure to assemble the product with the appropriate devices so as to prevent an accident;

aa.     failure to properly inspect the product prior to placing it in the stream of commerce;

bb.     failure to design a product with adequate material and safety devices;

cc.     distributing a defective product to the general public and to the Plaintiff's employer;

dd.     advertising a defective product to the general public and to the Plaintiff's employer;

ee.     failure to properly train, control and supervise the intended users in the design, manufacture, reconditioning, maintenance, use and assembly of said product;

ff.     making false representations to Plaintiff that the product was safe for use, when, in fact, said product was defective and in a dangerous condition;

gg.     utilizing defective materials in the manufacture, design, installation, maintenance or use of the product;

hh.     failure to properly maintain and service the product so that it would not become a hazard to person situated such as the Plaintiff;

ii.     negligence, carelessness and recklessness at law;

jj.     such other and further acts of negligence and recklessness as will be developed by future discovery in this case.

209.    The negligence, carelessness and recklessness of the Defendant, Siemens-Furnas Controls, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff and expenses as set forth above.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Siemens-Furnas Controls, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XLVIII
## JAE HWAN HWANG V. SIEMENS-FURNAS CONTROLS
## BREACH OF WARRANTY

210.    Plaintiff hereby incorporates paragraphs 1 through 209 as if the same were herein set forth at length.

211.    Defendant, Siemens-Furnas Controls, expressly and impliedly warranted that the product was safe and fit for the particular purpose for which it was made.

212.    The aforesaid breach of warranty was the proximate cause of the injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Siemens-Furnas Controls, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XLIX
## JAE HWAN HWANG V. SIEMENS-FURNAS CONTROLS
## SUCCESSOR LIABILITY

213.　Plaintiff hereby incorporates paragraphs 1 through 212 as if the same were herein set forth at length.

214.　Defendant, Siemens-Furnas Controls, is the successor of Furnas Electric Co., and therefore, it is liable for Plaintiff's injuries and damages.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Siemens-Furnas Controls, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XLX
## JAE HWAN HWANG V. FURNAS ELECTRIC CO.
## STRICT LIABLITY

215.　Plaintiff incorporates paragraphs 1 through 214 as though fully set forth herein at length.

216.　Defendant, Furnas Electric Co., is strictly liable pursuant to Section 402A of the Restatement of Torts 2d as said product was defective and unreasonably dangerous at the time it was distributed and Defendant failed to warn Plaintiff and other prospective users of said defects and dangers.

217.　As a result of the defect and/or other reasonably dangerous propensities of the product, Plaintiff was caused to sustain injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against the Defendant, Furnas Electric Co., its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

218.    Plaintiff incorporates paragraphs 1 through 217 as though fully set forth herein at length.

219.    The negligence, carelessness and recklessness of Defendant, Furnas Electric Co., consists of, but is not limited to, the following:

a.    improperly placing the "ON/OFF" switch in a safe position so that a person, such as Plaintiff, whose hand becomes caught in the meat grinder can reach the switch to turn off the machine;

b.    failure to properly position the "ON/OFF" switch so that it would not become a hazard to persons situated such as the Plaintiff;

c.    failure to place a durable safety guard on the product to prevent persons from placing their hands in or near the grinder;

d.    failure to have a "foolproof" guard that was permanently attached to prevent a person's hand from accessing the grinder;

e.    failure to lengthen the feed throat to move the grinder farther away from the operator's fingers;

f.    failure to have an emergency stop switch;

g.    permitting a defective product to be placed into the stream of commerce being sold and eventually utilized by the foreseeable user;

h.    failure to do anything to notify owners of potential improvements made to the product, including a retrofit program;

i.       failing to notify owners of the dangers of the product;

j.       failure to adequately warn of the inherent dangers and propensities of its product;

k.       failure to adequately provide for protective measures including a "fail safe" technology;

l.       failure to employ adequate measures in the assembly, design, manufacture, recondition and production of the product to prevent the grinder from being a hazard to persons situated such as Plaintiff;

m.       failure to protect its product from seizing to function safely and properly;

n.       failure to inspect the product so as to prevent an injury from occurring;

o.       failure to properly design said product in such a manner as would afford adequate protection from injury of the lawful user thereof;

p.       failure to supply adequate warnings to the users thereof that the product would malfunction and cause injury;

q.       failure to supply any notices of warnings of the dangers of the product;

r.       failure to design, manufacture and assemble said product in such a manner that it would not become defective;

s.       failure to warn the Plaintiff, or other users of the risk of the product;

t.       failure to exercise due care in the design, assembly and manufacture of said product required under the circumstances;

u.       failure to install or place warning notices in obvious or conspicuous places on said product;

v.    failure to warn of the many limitations with respect to the capabilities and capacities of the product;

w.    failure to comply with various laws, regulations and customs of the industry with regard to safety of such products, including, but not limited to the laws of the United States of America and the Commonwealth of Pennsylvania;

x.    failure to comply with OSHA regulations with regard to the safety of such products;

y.    otherwise failing to use care and caution under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure, defect or malfunction of said product;

z.    failure to assemble the product with the appropriate devices so as to prevent an accident;

aa.    failure to properly inspect the product prior to placing it in the stream of commerce;

bb.    failure to design a product with adequate material and safety devices;

cc.    distributing a defective product to the general public and to the Plaintiff's employer;

dd.    advertising a defective product to the general public and to the Plaintiff's employer;

ee.    failure to properly train, control and supervise the intended users in the design, manufacture, reconditioning, maintenance, use and assembly of said product;

ff.     making false representations to Plaintiff that the product was safe for use, when, in fact, said product was defective and in a dangerous condition;

gg.     utilizing defective materials in the manufacture, design, installation, maintenance or use of the product;

hh.     failure to properly maintain and service the product so that it would not become a hazard to person situated such as the Plaintiff;

ii.     negligence, carelessness and recklessness at law;

jj.     such other and further acts of negligence and recklessness as will be developed by future discovery in this case.

220.     The negligence, carelessness and recklessness of the Defendant, Siemens-Furnas Controls, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff and expenses as set forth above.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Siemens-Furnas Controls, its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

## COUNT XLXII
## JAE HWAN HWANG V. FURNAS ELECTRIC CO.
## BREACH OF WARRANTY

221.     Plaintiff hereby incorporates paragraphs 1 through 220 as if the same were herein set forth at length.

222.     Defendant, Furnas Electric Co., expressly and impliedly warranted that the product was safe and fit for the particular purpose for which it was made.

223. The aforesaid breach of warranty was the proximate cause of the injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Jae Hwan Hwang, demands judgment against Furnas Electric Co., its agents, servants, workmen and/or employees, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

**COUNT XLXIII**
**YOUNG HWANG V. ALL DEFENDANTS,**
**BUTCHER BOY LIMITED d/b/a BUTCHER BOY, IGM SYSTEMS LTD d/b/a**
**BUTCHER BOY, WILLIAM LASAR III d/b/a BUTCHER BOY, WESTGLEN**
**CORPORATION d/b/a BUTCHER BOY, LASAR MANUFACTURING COMPANY,**
**INC. d/b/a BUTCHER BOY, AMERICAN MEAT EQUIPMENT CORP. d/b/a BUTCHER**
**BOY, AMERICAN MEAT EQUIPMENT LLC d/b/a BUTCHER BOY,**
**BUTCHER BOY, SIEMENS-FURNAS CONTROLS AND FURNAS ELECTRIC CO.**

224. Plaintiff incorporates paragraphs 1 through 223 as though fully set forth herein at length.

225. At all times relevant hereto, Plaintiff, Young Hwang is the wife of Plaintiff, Jae Hwan Hwang.

226. As a result of the injuries suffered by her husband, Plaintiff, Jae Hwan Hwang, has and will in the future suffer the loss and deprivation of the usual services, society and consortium of her husband and has been required to provide special services and care to him.

WHEREFORE, Young Hwang, demands judgment against all Defendants, their agents, servants, workmen, employees, subsidiaries and/or related companies, for an amount in excess of One Hundred Thousand ($150,000.00) Dollars

Respectfully submitted,

ADAMS RENZI LAW

BY: _____

CHRISTY ADAMS, ESQUIRE
Attorney for Plaintiff(s)

# EXHIBIT A

# IGBsystems

**reaching the limits**

**manufactured by Butcher Boy Limited**



**p**
**u**
**s**
**h**
**i**
**n**
**g**

*your production*
*beyond the limits*

- Home
- company
- machines
- Parts
- contact

## company profile

Butcher Boy was created in 1927 by William Lasar II, at the time a young German engineer emigrant, who designed and built a meat saw for his brother Rudolf's butcher shop in Goleta, California, USA. It never occurred to him that his invention would serve anyone else than his brother. However, a salesman from a butcher supplies company, who made regular sales calls to Rudolf's shop thought differently.

He had never seen or even heard of a meat saw before and asked what it was. The young engineer proudly described his invention and the salesman was very impressed. He said he would return with his sales manager to see if they could perhaps sell some machines.

When the salesman and his manager returned a few days later, they asked to speak to the *young butcher's boy* who designed the meat saw. William (Bill) then met with them and described the purpose of the machine.

In 1927, this was considered a new high tech product and the salesmen were very excited when they made a marketing arrangement to begin selling the meat saws, but, the new product needed a name...

When the salesmen went into the butcher shop looking for Bill, they asked the other butchers if they could speak to the *butcher boy* (a name used at the time to describe a butcher's helper). Since the new saw was a butcher's helper and Bill was working at Rudolf's shop as a butcher's helper, they all decided to name the product BUTCHER BOY, to represent William Lasar II, the inventor of the new meat saw.

From this humble beginning, Bill eventually moved to Los Angeles, California to start Lasar Machine Works, in 1929, which eventually evolved into Lasar Manufacturing Company, Inc.

Over the next 55 years, Bill Lasar designed and created hundreds of machines and thousands of parts with his own hands. He received many United States Patents and contributed greatly to the Meat Processing Industry for his developments with meat saws, meat grinders, automatic meat grinders, mixer-grinders, meat flakers and countless other machines.

In 1980, Bill and his son, William Lasar III, who had worked along side his father for many years, established Butcher Boy Limited in Scotland. This family relationship was very instrumental to the growth of our company over the past twenty years.

Today, Butcher Boy Limited is the world centre for BUTCHER BOY. From our 60,000 sq. ft. factory in Scotland, we design, manufacture and market BUTCHER BOY machines, processing systems and replacement parts to most countries of the world through established distributors and factory sales/service offices.

All of us at Butcher Boy Limited are very proud of our company's heritage and continually strive to maintain the quality, durability and integrity of BUTCHER BOY products which began 75 years ago by a very creative young engineer.

## VERIFICATION

_Jae Hwan Hwang_ states that he/she is the Plaintiff herein, that he/she is acquainted with the facts set forth in the foregoing PLEADING, that the same are true and correct to the best of my knowledge, information and belief; and that this statement is made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsifications to authorities.

_____

*EXHIBIT "B"*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAE HWAN HWANG, and YOUNG HWANG | : CIVIL ACTION NO. |
| | : |
| | : (On Removal from the Philadelphia, |
| v. | : Pennsylvania County Court of Common |
| | : Pleas No. 001016) |
| BUTCHER BOY LIMITED d/b/a | : |
| BUTCHER BOY, et al. | : CONSENT TO REMOVAL OF ACTION |

## CONSENT TO REMOVAL OF ACTION

Defendant Siemens Energy & Automation, Inc. improperly sued as Siemens Furnas Controls' hereby advises this court that it consents in the removal of the state court action described in the foregoing Notice of Removal filed by American Meat Equipment Corp. d/b/a/ Butcher Boy.

The undersigned states that she has authority to give consent to removal on said defendant's behalf.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

Kathleen D. Wilkinson
Attorney I.D. No. 34579
The Curtis Center, Suite 1130 East
Philadelphia, PA 19106
(215) 627-6900
Attorneys for Defendant Siemens
Energy & Automation, Inc.

354151.1